IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| HUGO CASTRO-GOMEZ, *also known as* | § | |
| HUGO CASTRO, *also known as* HUGO | § | 1:18-CR-187-RP |
| DOMINGUEZ CASTRO, *also known as* | § | |
| HUGH DOMINGUEZ, *also known as* | § | |
| HUGO GOMEZ, *also known as* HUGO | § | |
| GOMEZ CASATRO, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Under the Immigration and Nationality Act ("INA"), immigration judges are responsible for

conducting proceedings that decide the inadmissibility or deportability of a noncitizen. 8 U.S.C.

§ 1229a(a)(1). Although the INA does not specify when jurisdiction vests in an immigration judge,

federal regulations provide that jurisdiction vests when a "charging document" is filed with the

immigration court. 8 C.F.R. § 1003.14(a). A charging document includes a notice to appear

("NTA"). 8 C.F.R. § 1003.13. But the INA and the federal regulations define "notice to appear"

differently: the INA requires that an NTA provide the time and place of a removal hearing, while

the federal regulations do not. *Compare* 8 U.S.C. § 1229(a)(1)(G)(i) *with* 8 C.F.R. § 1003.15(b). In this

case, Defendant Hugo Castro-Gomez ("Castro-Gomez") was served an NTA that did not specify a

time or place for his removal hearing. Yet Castro-Gomez appeared before an immigration judge and

was ordered removed.

In this action, Castro-Gomez was found in the United States after having been removed, and

was indicted for illegal reentry. (Dkt. 8). Before the Court is Defendant Castro-Gomez's Motion to

Reconsider. (Dkt. 41). Castro-Gomez asks the Court to reconsider the denial of his motion to

dismiss the indictment in this action. (Dkt. 40). Castro-Gomez challenges his prior removal order, in

light of the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), because it did not specify a time or place for his removal hearing. As a result, Castro-Gomez argues that jurisdiction never vested with the immigration judge, and the removal order was issued *ultra vires*. After thoroughly reviewing the circumstances of Castro-Gomez's case, the arguments raised by both parties in their briefs, and the relevant law, the Court finds that both Castro-Gomez's motion to reconsider and his motion to dismiss the indictment should be granted.

## I. BACKGROUND

Castro-Gomez was indicted with a single count of illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a). (Indictment, Dkt. 8; Gov't. Resp. Mot. Dismiss, Dkt. 35, at 2). Specifically, the Government alleges that Castro-Gomez is a noncitizen who was found in the United States on April 3, 2018, and that Castro-Gomez was previously removed from the United States to Mexico on or about July 30, 2004. (*See* Compl., Dkt. 1, at 1).

Castro-Gomez is a citizen of Mexico. (Gov't. Resp., Dkt. 35, at 2). He first came to the United States in 1972. (Mot. Dismiss, Dkt. 27, at 2–3). Castro-Gomez became a temporary resident under the Immigration Reform and Control Act of 1986 ("IRCA") in 1988, and in 1991, he was admitted as a lawful permanent resident. (*Id.* at 3). On March 6, 2003, Castro-Gomez was convicted of Assault—Family Violence. (*See* Indictment, Dkt. 27-3). His offense was enhanced to a third degree felony based on a previous conviction for Assault—Family Violence. (*Id.* at 2); *see* Tex. Penal Code § 22.01(b)(2)(A). Castro-Gomez pleaded guilty and was sentenced to two years' incarceration. (Judgment, Dkt. 27-3, at 12–13).

In September 2003, immigration authorities served Castro-Gomez with a notice to appear ("NTA") at a removal hearing. (*See* NTA, Dkt. 27-2, at 2). The NTA charged that Castro-Gomez was subject to removal under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8

U.S.C. § 1227(a)(2)(A)(iii), because he was convicted of an aggravated felony: Assault—Family Violence. (*See* NTA, Dkt. 27-2, at 2). The NTA did not name a time or place for the hearing. (*Id.*).

At the hearing, Castro-Gomez was ordered removed, and he waived appeal. (Mot. Dismiss, Dkt. 27, at 4; Gov't Resp., Dkt. 35, at 4; Order, Dkt. 27-4). Castro-Gomez was removed from the United States on July 30, 2004 and advised that he could never again apply for permission to return based on his aggravated felony conviction. (Mot. Dismiss, Dkt. 27, at 4; *see* Warrant Removal, Dkt. 27-5; Warning Alien Removed, Dkt. 27-6). Castro-Gomez's removal order was reinstated on May 3, 2018, when he was found in the United States. (Order, Dkt. 27-7, at 3–4). It is this removal order that forms the basis of Castro-Gomez's illegal reentry indictment.

Castro-Gomez moved to dismiss the illegal reentry indictment, relying on two recent decisions by the Supreme Court: *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). Castro-Gomez argued that his pending indictment for illegal reentry must be dismissed because his sole prior removal order was invalid under both *Dimaya* and *Pereira*. (Mot. Dismiss, Dkt. 27, at 2). First, he contended that, applying *Dimaya* retroactively, his conviction for Assault—Family Violence is not an aggravated felony, he was not deportable as charged, and his deportation violated the Due Process Clause of the Constitution. (Mot. Dismiss, Dkt. 27, at 1–2). Second, Castro-Gomez argued that he received an NTA that did not indicate the removal hearing's time or place as required by statute, rendering the removal proceeding invalid under *Pereira*. (*Id.* at 8–9). The Government filed a response. (Resp. Mot. Dismiss, Dkt. 35).

On November 28, 2018, this Court denied Castro-Gomez's motion to dismiss. (Order, Dkt. 40). The Court reasoned that because Castro-Gomez had not exhausted his challenge to the NTA in

his earlier deportation proceeding, Castro-Gomez could not collaterally attack his conviction under the statutory requirements of 8 U.S.C. § 1326(d).[1] (Order, Dkt. 40, at 5).

Castro-Gomez now asks the Court to reconsider that decision, again re-urging his argument that because the NTA did not state a time and place for his removal hearing, he was not served a valid NTA under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). (Mot. Reconsider, Dkt. 41). As a result, he contends that the immigration court lacked jurisdiction to order him removed, and the original removal order is invalid. (*Id.* at 1). Castro-Gomez also argues that any attempt to challenge the deficient NTA before the Board of Immigration Appeals ("BIA") is futile, because he has no opportunity to do so in current proceedings before the BIA. (*Id.* at 2). Thus, Castro-Gomez asks the Court to reconsider its order denying his motion to dismiss the indictment.

## II. LEGAL STANDARD

A motion for reconsideration in the criminal context is a judicial creation not derived from statutes or rules. *See United States v. Brewer*, 60 F.3d 1142, 1143 (5th Cir. 1995); *United States v. Salinas*, 665 F. Supp. 2d 717, 720 (W.D. Tex. 2009). District courts have continuing jurisdiction over criminal cases, and they are free to reconsider their own earlier decisions. *See United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975); *Salinas*, 665 F. Supp. 2d at 720. Still, "[m]otions for reconsideration 'serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Salinas*, 665 F. Supp. 2d at 720 (quoting *United States v. Banks*, No. 1:08-CR-113, 2009 WL 585506, at *1 (E.D. Tex. Mar. 6, 2009)); *see also Waltman v. Int'l Paper Co.*, 875 F.32d 468, 473 (5th Cir. 1989).

To prove a charge of illegal reentry into the United States by a previously deported noncitizen, the Government must prove beyond a reasonable doubt that Castro-Gomez "(1) was an

---

[1] The Court also found that since Castro-Gomez's case was closed when he was removed to Mexico in 2004, the change in law announced in *Dimaya* did not retroactively render his removal fundamentally unfair, and thus cannot support a due process violation. (*Id.* at 8–9). Castro-Gomez does not ask the Court to reconsider its order denying his motion to dismiss the indictment in light of *Dimaya*. (*See* Mot. Reconsider, Dkt. 41, at 1).

alien at the time of the alleged offense; (2) had been previously deported; (3) attempted to enter the United States; and (4) had not received the express consent of the Attorney General or the Secretary of the Department of Homeland Security." *United States v. Jara-Favela*, 686 F.3d 289, 302 (5th Cir. 2012). Only the second element is at issue here: Castro-Gomez argues that he was never served an NTA, so his removal proceedings are void for want of jurisdiction, and he was never "previously deported." (*See* Mot. Reconsider, Dkt. 41, at 1–2). At the core of Castro-Gomez's motion to dismiss is whether he may collaterally attack the underlying removal order that supports his indictment for illegal reentry in this action.

### III. DISCUSSION

Castro-Gomez makes two arguments that the Court should reconsider its order denying his motion to dismiss. First, he re-urges his position that an NTA that does not state a time and place is invalid for statutory purposes. (Mot. Reconsider, Dkt. 41, at 1). Castro-Gomez was issued an NTA that did not specify a date, time, or place for his removal proceeding, contrary to the definitional requirements under the INA. And without a valid NTA, Castro-Gomez argues that an immigration court lacks jurisdiction. (Mot. Dismiss, Dkt. 27, at 8 (quoting *Pereira*, 138 S. Ct. at 2115)). Second, he argues that he is unable to make this argument to the BIA in a motion to reopen. Although Castro-Gomez is currently appealing the immigration judge's denial of his motion to reopen to the BIA, Castro-Gomez argues that any attempt to challenge the underlying removal order is futile, and thus is not an available administrative remedy. (Mot. Reconsider, Dkt. 41, at 2, 4–5). The Government argues that Castro-Gomez has not presented any new facts or arguments that were unavailable to him in the underlying motion to dismiss, (Resp. Mot. Reconsider, Dkt. 44, at 4), and that the Court correctly applied the statutory requirements under 8 U.S.C. § 1326(d) in finding that Castro-Gomez

had not exhausted his argument before the BIA, (*see id.* at 4–5). The Court disagrees, and finds it necessary to reconsider Castro-Gomez's motion to dismiss.[2]

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to challenge the removal order upon which the charge is predicated in the criminal proceeding before the district court. *United States v. Mendoza–Lopez*, 481 U.S. 828, 837–38 (1987). In order to collaterally attack a prior removal order in a criminal proceeding, a defendant typically must demonstrate that: "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez–Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002).

The Fifth Circuit regards this test as "effectively codified" in 8 U.S.C. § 1326(d). *United States v. Lopez–Vasquez*, 227 F.3d 476, 483 n.13 (5th Cir. 2000). Under § 1326(d), a noncitizen may not challenge the validity of a removal order unless the noncitizen establishes that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). To successfully challenge a removal order, a noncitizen must prove all three prongs. *United States v. Cordova–Soto*, 804 F.3d 714, 719 (5th Cir. 2015). "If the alien fails to establish one

---

[2] Many district courts have addressed this issue since the Court denied Castro-Gomez's original motion to dismiss. Some have concluded that regardless of the § 1326(d) factors, a removal order may always be challenged for lack of jurisdiction. *See, e.g.,* *United States v. Rojas Osorio*, No. 17-CR-00507-LHK, 2019 WL 235042 (N.D. Cal. Jan. 16, 2019); *United States v. Rodriguez–Rosa*, No. 3:18-cr-00079-MMD-WGC, 2018 WL 6635286 (D. Nev. Dec. 11, 2018); *United States v. Soto–Mejia*, No. 2:18-cr-00150-RFB-NJK, 2018 WL 6435882 (D. Nev. Dec. 7, 2018); *United States v. Tzul*, No. 4:18-CR-0521, 2018 WL 6613348 (S.D. Tex. Dec. 4, 2018); *United States v. Erazo–Diaz*, No. CR-18-00331-001-TUC-RM (LAB), 2018 WL 6322168 (D. Ariz. Dec. 4, 2018). Others have dismissed collateral attacks on removal orders where an NTA is deficient under 8 U.S.C. § 1229(a)(1)(G)(i). *See, e.g., Karingithi v. Whitaker*, No. 16-70885, 2019 WL 333335 (9th Cir. 2019); *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018); *United States v. Chavez*, No. 2:17-CR-40106-01-HLT, 2018 WL 6079513 (D. Kan. Nov. 21, 2018); *United States v. Duarte*, No. 4:18-CR-3083, 2018 WL 6493090 (D. Neb. Nov. 30, 2018), *report and recommendation adopted*, No. 4:18-CR-3083, 2018 WL 6492750 (D. Neb. Dec. 10, 2018). It is in light of these decisions and with the benefit of the reasoning within them that the Court decides to reconsider Castro-Gomez's motion to dismiss.

prong of the three part test, the Court need not consider the others." *Id.* (quoting *United States v. Mendoza–Mata*, 322 F.3d 829, 832 (5th Cir. 2003)). In addition to these factors, the Fifth Circuit also requires a showing of actual prejudice. *Id.* To show prejudice, the noncitizen must show that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Id.* (quoting *United States v. Benitez–Villafuerte*, 186 F.3d 651, 658–59 (5th Cir. 1999)).

### A. The Underlying Removal Order is Void for Lack of Jurisdiction

Castro-Gomez argues that an NTA that does not state a time and place is invalid for statutory purposes. (*See* Mot. Reconsider, Dkt. 41, at 1; Reply Mot. Dismiss, Dkt. 38, at 2–3). The Court agrees. The statutory limitation on collateral attacks under 8 U.S.C. § 1326(d) presumes that subject-matter jurisdiction existed over the original removal proceeding, and that the noncitizen was removed pursuant to a valid order. Here, jurisdiction never vested in the immigration judge because Castro-Gomez was issued an NTA that did not specify a time or place for his removal proceeding, contrary to the definitional requirements under the INA. *See* 8 U.S.C. § 1229(a)(1)(G)(i). As a result, Castro-Gomez's removal order is void.

#### 1. § 1326 Does Not Preclude Collateral Attacks Based on Lack of Jurisdiction

Section 1326(d) explicitly limits collateral attacks on an underlying deportation order, but this presumes that an order is issued within an immigration judge's jurisdiction. A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to challenge the removal order upon which the charge is predicated in the criminal proceeding before the district court. *Mendoza–Lopez*, 481 U.S. at 837–38. The ability to collaterally challenge a deportation order is a constitutional right, not a statutory one. *See id.* "To the extent that Congress has explicitly attempted to limit the defendant's ability to raise [a collateral challenge to a deportation proceeding], it lacks the authority to do so. Congress may not deprive the defendant of the ability to raise a collateral attack

that he is entitled to raise by the Constitution." *United States v. Montano–Bentancourt*, 151 F.Supp.2d 794, 798 (W.D. Tex. 2001).

This includes challenges to the validity of an immigration judge's authority to conduct removal proceedings. Subject-matter jurisdiction refers to "a tribunal's 'power to hear a case'" *at all*, something that "can never be forfeited or waived." *See Union Pac. Ry. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 69 (2009) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)). "[J]urisdictional defects render a judgment void, and . . . void judgments are subject to collateral attack." *Matter of Reitnauer*, 152 F.3d 341, 344 n.12 (5th Cir. 1998); *see also Republic of Ecuador v. Connor*, 708 F.3d 651, 655 n.6 (5th Cir. 2013). Where a judgment is "void for lack of jurisdiction . . . [a] defendant is always free to ignore the judicial proceedings . . . and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014) (citing *Ins. Corp. of Ireland, Ltd. v. Compagniedes Bauxites de Guinee*, 456 U.S. 694, 706 (1982)). A removal order issued by an immigration judge is a judgment; it may be appealed to the BIA. *See* 8 C.F.R. § 1003.38(a); Fed. R. Civ. P. 54(a). Thus, in the immigration context, where an immigration judge lacks the authority to order a noncitizen removed, the deportation order is a "legal nullity." *See James v. Gonzales*, 464 F.3d 505, 513 (5th Cir. 2006) (adopting the reasoning in *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 884–85 (9th Cir. 2003)); *Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) ("When the IJ lacks jurisdiction, his decisions are nullities.").

Courts have an affirmative duty to ensure that judicial authority is consistent with its jurisdiction. *See Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (noting that courts have a duty to ensure that "jurisdiction . . . defined and limited by statute, is not exceeded"); *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930) ("[I]f the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it."). But this is particularly true of administrative

proceedings—Courts are obligated to police the boundaries of statutory jurisdiction granted to non-Article III tribunals to ensure that they do not overstep their carefully delineated authority. *See Pereira*, 138 S. Ct. at 2120 (Kennedy, J., dissenting) (expressing concern about courts deferring to an agency's interpretation of statutes governing the scope of its own authority); *Arlington v. FCC*, 569 U.S. 290, 327 (2013) (Roberts, C.J., dissenting) ("We do not leave it to the agency to decide when it is in charge."). Without judicial intervention, an agency's exercise of authority *ultra vires* risks undermining fundamental separation-of-powers principles that safeguard individual liberty and the constitutional functions of the judicial branch. Given these concerns, the Court finds that Castro-Gomez need not satisfy the § 1326(d) requirements to collaterally attack the underlying deportation order for lack of jurisdiction.

### 2. *The Immigration Judge Lacked Jurisdiction Over Castro-Gomez*

Castro-Gomez argues that because the NTA for his underlying removal order lacked a time and place for his removal proceeding, so the putative NTA he received in 2004 was not an NTA at all. (Mot. Dismiss, Dkt. 27, at 8 (quoting *Pereira*, 138 S. Ct. at 2115)). Without an NTA, Castro-Gomez argues, there was no charging document, and without a charging document, jurisdiction never vested in the immigration judge who ordered Castro-Gomez removed. (*Id.*).

Removal proceedings are regulated by statute under 8 U.S.C. § 1229a. *See James v. Gonzales*, 464 F.3d at 513. This statute represents the source of an immigration judge's authority. Section 1229a provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). This is the "sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3). Although the INA grants the immigration judge broad authority to conduct the proceeding and provides the flexibility to

determine the form that proceeding may take, *id.* § 1229a(b)(1), (2)(A), it does not define the contours of an immigration judge's jurisdiction.

Instead, Congress delegated the power to define the contours of an immigration judge's authority to the Attorney General, granting broad authority to "establish such regulations . . . as the Attorney general determines to be necessary for carrying out this section." *See* 8 U.S.C. § 1103(g)(1), (2). The implementing regulations further specify that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a); *see also DeLeon–Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001) ("[R]emoval proceedings commence when the [Department of Homeland Security] files the appropriate charging document with the immigration court."). A charging document includes an NTA. *Id.* § 1003.13 ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . [T]hese documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."). Jurisdiction thus hinges on the definition of an NTA.

Both the statute and the regulations define a "notice to appear" for removal proceedings. The statute governing removal proceedings defines "notice to appear" as a "written notice" that "specif[ies] . . . [t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). The regulations governing the jurisdiction of an immigration judge define "notice to appear" differently. They state that a notice to appear "must also include" a list of information that specifies all of the same information required by the statute, except that the time and place of the removal proceeding are omitted. 8 C.F.R. § 1003.15(b). The regulations also state that "[i]n removal proceedings pursuant to section 240 of the Act, the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." *Id.* § 1003.18(b). As a result of these conflicting definitions, the Government and Castro-Gomez dispute which

definition controls the immigration judge's jurisdiction. (Mot. Dismiss, Dkt. 27, at 8 ("The Notice to Appear did not conform with the Immigration and Nationality Act."); Resp. Mot. Dismiss, Dkt. 35, at 15 ("The Notice to Appear that was filed in the defendant's own case complies with these regulatory requirements.")).

In *Pereira v. Sessions*, the Supreme Court resolved the apparent conflict between the statutory and regulatory definition of notice to appear. *See* 138 S. Ct. 2105 (2018). The Court addressed the "narrow" issue of whether "a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger the stop-time rule?" *Id.* at 2113. Although the Court framed the issue narrowly, its holding and rationale were not so limited. The Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' *and so* does not trigger the stop-time rule." *Id.* at 2113–14 (quoting 8 U.S.C. § 1229b(d)(1)(A)) (emphasis added). The Court reasoned that "[t]he plain text, the statutory context, and common sense all lead inescapably and unambiguously to that conclusion." *Id.* at 2110.

The Government disputes that *Pereira* requires that a notice to appear specify a time and place of removal proceedings for jurisdictional purposes. First, the Government argues that *Pereira* was limited to the stop-time rule. (*See* Resp. Mot. Dismiss, Dkt. 35, at 14, 16–22). Next, the Government argues that the regulations determine when jurisdiction vests, and thus they are entitled to "substantial deference" under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (Resp. Mot. Dismiss, Dkt. 35, at 24–30). Finally, the Government argues that the NTA definition merely supplies a procedure for removal proceedings, not jurisdiction. (Resp. Mot. Dismiss, Dkt. 35, at 22–24).

*Pereira* was not limited to the stop-time rule. *Pereira* held that the time-and-place requirement is "definitional" for a document that purports to be a notice to appear. *Pereira*, 138 S. Ct. at 2116.

"[T]he omission of time-and-place information is not, as the dissent asserts, some trivial, ministerial defect, akin to an unsigned notice of appeal. . . . Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive [the notice to appear] of its essential character." *Id.* at 2116–17 (internal citations and quotation marks omitted). Although *Pereira* acknowledged that the issue before the Court involved a specific and "narrow" question relating to the stop-time rule, *id.* at 2111–12, the Supreme Court did not limit its construction of the Notice to Appear to the stop-time rule. "*Pereira* does not say that a putative notice to appear that omits the time and place of a removal hearing fails to trigger the stop-time rule—it says that such a document is not a notice to appear *at all.*" *United States v. Valladares*, No. 1:17-CR-156-SS (W.D. Tex. Oct. 30, 2018) (Order, Dkt. 44, at 8). In short, concluding that an NTA must specify the time and place of a removal hearing was a necessary finding before the Court could resolve the stop-time issue.

Pereira also explicitly states that the time and place requirement applies in every place where the term "notice to appear" is used in the statute: "when the term 'notice to appear' is used elsewhere in the statutory section, *including* as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, 138 S. Ct. at 2116 (2018) (emphasis added). This is a "straightforward understanding of the text." *Id.* After all, "it is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012). "[G]iven the clarity of the plain language," this Court must "apply the statute as it is written." *Pereira*, 138 S. Ct. at 2120 (quoting *Burrage v. United States*, 571 U.S. 204, 218 (2014)). Thus, the Court's requirement that an NTA include the time and place of a removal hearing extends beyond the stop-time rule.

This analysis is further supported by the fact that *Pereira* considered and rejected the regulation's treatment of the time and place details as optional. The same regulation on which the

Government relies provides in another section that an NTA shall include "the time, place and date of the initial removal hearing, *where practicable*." 8 C.F.R. § 1003.18(b) (emphasis added). In *Pereira* the Supreme Court noted this provision, *id.* at 2111, weighed the Government's concern that including the time and place may be frequently *impracticable*, and concluded that "[t]hese practical considerations are meritless and do not justify departing from the statute's clear text." *Pereira*, 138 S. Ct. at 2118. Having considered whether the regulations might control in some circumstances, the Supreme Court rejected this possibility in favor of the statute's express requirements.

This Court is also not convinced that the regulations are entitled to deference under *Chevron*. As a general rule of statutory interpretation, a regulatory definition does not displace a statutory definition where the statute is clear and unambiguous. "In the process of considering a regulation in relation to specific factual situations, a court may conclude the regulation is inconsistent with the statutory language or is an unreasonable implementation of it. In those instances, the regulation will not control." *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. Here, the expressed intent of Congress is unambiguous. Section 1229(a) expressly provides that a Notice to Appear is a "written notice" that "specif[ies] . . . [t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Without a time and place, a notice fails to meet the requirements for an NTA under the statute. The Supreme Court affirmed that § 1229(a) this understanding in *Pereira*: "[T]he plain text, the statutory context, and common sense all lead inescapably and unambiguously" to the conclusion that "a notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)." 138 S. Ct. at 2110 (internal citations and quotations omitted); *see also id.* at 2113–14. Accordingly, this Court concludes that Congress unambiguously intended that an NTA must always specify the time and

place of the removal hearing.[3] Because the statute is unambiguous, the statutory definition must control.

Serving a charging document under § 1003.14(a) is a necessary trigger to vest jurisdiction with the immigration court. *See Tzul*, 2018 WL 6613348, at *3; *Cruz–Jiminez*, 2018 WL 5779491, at *7. *Pereira* acknowledged that the "time and place" provision imposed substantive requirements, not merely a procedural requirement. The Court noted that "the omission of time-and-place information is not . . . some trivial, ministerial defect . . . . Failing to specify integral information like the time and place of removal proceedings unquestionably would 'deprive the notice to appear of its essential character.'" *Pereira*, 138 S. Ct. at 2116–17 (cleaned up) (citation omitted). And in the regulations, the Attorney General explicitly provided that jurisdiction does not vest with the immigration court unless and until a valid charging document is filed. *See* 8 C.F.R. § 1003.13(a); *see also DeLeon–Holguin*, 253 F.3d at 815 ("Removal proceedings commence when the INS files the appropriate charging document with the immigration court."). Without the time and place, a notice to appear is not a charging document, and thus fails to confer jurisdiction.

Finally, as a matter of common sense, the NTA that initiates removal proceedings under the statute and the NTA that vests jurisdiction in an immigration judge under the implementing regulations refer to the same document. The statute and the regulations are addressing the same subject matter and the same proceedings. Moreover, "as noted in *Pereira*, there is no reason why the function of a notice to appear should affect the information that it must include." *Cruz–Jimenez*, 2018 WL 5779491 (Dkt. 31, at 11); *see also Pereira*, 138 S. Ct. at 2115 n.7 ("Even if a notice to appear functions as a 'charging document,' that is not mutually exclusive with the conclusion that a notice to appear serves another equally integral function: telling a noncitizen when and where to appear.").

---

[3] As noted in *Pereira*, this requirement does not prevent the Government from revising the time and place of a removal hearing according to its ordinary administrative needs, as long as the Government "provides 'written notice . . . specifying . . . the new time or place of the proceedings' and the consequences of failing to appear." *Pereira*, 138 S. Ct. at 2119 (quoting 8 U.S.C. § 1229(a)(2)).

In sum, the Government has not raised any persuasive arguments for replacing the plain statutory requirements under § 1229(a) with the regulation's requirements in 8 U.S.C. § 1003.15(b). This Court must apply the statutory definition of the NTA "as it is written." *Pereira*, 138 S. Ct. at 2120 (quoting *Burrage*, 571 U.S. at 218). "A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a)." *Id.* at 2113 (internal citations and quotations omitted). An NTA that fails to specify the time and place of a removal proceeding cannot serve as a "charging document" that vests the immigration court with jurisdiction. Because the NTA that Castro-Gomez received failed to specify the time and place for the removal proceeding, jurisdiction never vested with the immigration judge, and the underlying removal order is a legal nullity. *See James v. Gonzales*, 464 F.3d at 513. As a result, the removal order cannot be used to support a criminal conviction for illegal reentry, and the indictment in this case must be dismissed. *See Mendoza–Lopez*, 481 U.S. at 841–42.

## B. Castro-Gomez's Collateral Attack

Alternatively, because Castro-Gomez's underlying removal order was issued by an immigration judge without jurisdiction, he has satisfied this requirement to collaterally attack his prior removal order. *See Cordova–Soto*, 804 F.3d at 719 (quoting 8 U.S.C. § 1326(d)). The administrative exhaustion and judicial review requirements concern due process rights, which ultimately require a removal order be issued within an entity's jurisdiction. *See United States v. Ortiz*, No. 3:18-CR-00071-RWG, 2018 WL 6012390, at *3 (D. N.D. Nov. 7, 2018) (citing *Mendoza–Lopez*, 481 U.S. 828). And because Castro-Gomez's hearing is void for lack of jurisdiction, his opportunity to be heard was not a fair one.

### 1. Exhaustion of Administrative Remedies

Section 1326(d) first requires a noncitizen bringing a collateral challenge to a prior removal order to establish that he "exhausted any administrative remedies that may have been available to

seek relief against the order." 8 U.S.C. § 1326(d)(1). In denying Castro-Gomez's motion to dismiss, this Court concluded that he had not yet exhausted his jurisdictional challenge before the BIA and therefore had not satisfied this requirement. (Order, Dkt. 40, at 5–6). Castro-Gomez now argues that his current appeal of the immigration judge's denial of his motion to reopen is futile, and thus is not an available administrative remedy. (Mot. Reconsider, Dkt. 41, at 2, 4–5). The Government argues that Castro-Gomez has not presented any new facts or arguments that were unavailable to him in the underlying motion to dismiss, (Resp. Mot. Reconsider, Dkt. 44, at 4), and the Court correctly applied the statutory requirements under 8 U.S.C. § 1326(d) in finding that Castro-Gomez had not exhausted his argument that the NTA was deficient before the BIA, (*see id.* at 4–5). Upon further consideration, the Court now concludes that Castro-Gomez need not show that he exhausted his administrative remedies by raising his jurisdictional challenge to the BIA.

A defendant fails to exhaust his administrative remedies for an issue if he does not first raise the issue before the BIA, either on direct appeal or in a motion to reopen. *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009). This requirement applies to all issues for which an administrative remedy is available "as of right." *Id.* (quoting *Arce–Vences v. Mukasey*, 512 F.3d 167, 172 (5th Cir. 2007)). "A remedy is available as of right if (1) the petitioner could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such a claim." *Id.* "By its terms, [8 U.S.C. § 1326(d)(1)] only requires an alien to 'exhaust any administrative remedies *that may have been available* to seek relief against the challenged order.'" *United States v. Villanueva–Diaz*, 634 F.3d 844, 849 (5th Cir. 2011) (cleaned up) (quoting 8 U.S.C. § 1326(d)(1)). Although exhaustion is generally required, it is not a jurisdictional bar "when administrative remedies are inadequate." *Goonsuwan v. Ashcroft*, 252 F.3d 383, 389 (5th Cir. 2001) (quoting *Ramirez–Osorio v. INS*, 745 F.2d 937, 939 (5th Cir. 1984)). Such is the case where any attempt to exhaust administrative remedies "would have been

futile based on the state of the law at the time." *United States v. Ojeda–Escobar*, 218 F.Supp.2d 839, 844 (W.D. Tex. 2002) (citing *Goonsuwan*, 252 F.3d at 389).

Here, the BIA lacks an available and adequate mechanism to address Castro-Gomez's claim. *See Omari*, 562 F.3d at 320 (discussing *Toledo–Hernandez v. Mukasey*, 52 F.3d 332 (5th Cir. 2008)). Castro-Gomez has not yet made his jurisdictional challenge to the underlying removal order before the BIA, but he recently moved to reopen his deportation proceeding to make that challenge. However, Castro-Gomez's case is "not subject to being reopened" because his removal order has been reinstated by DHS. *Rodriguez–Saragosa v. Sessions*, 904 F.3d 249, 355 (5th Cir. 2018); 8 U.S.C. § 1231(a)(5). Additionally, because Castro-Gomez was removed pursuant to his original removal order in 2004, federal regulations prevent him from filing a motion to reopen. *See* 8 C.F.R. § 1003.2(d) ("A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of . . . removal proceedings subsequent to his . . . departure from the United States."). A motion to reopen is not an available administrative remedy where the BIA would refuse to take jurisdiction. *See Villanueva–Diaz*, 634 F.3d at 849. Not to mention, a Defendant need not exhaust administrative remedies in challenging the removal order for lack of subject-matter jurisdiction. *See Hendersn ex rel. Henderson*, 562 U.S. 428, 1202 (2011) ("Objections to subject-matter jurisdiction . . . may be raised at any time."). As a result, Castro-Gomez need not show that he has exhausted his administrative remedies because the BIA lacks an adequate mechanism to address and remedy his claim that the underlying removal order is void for lack of jurisdiction.[4]

---

[4] On the merits of Castro-Gomez's argument, the BIA has already resolved the jurisdictional issue in holding that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of . . . 8 U.S.C. § 1229(a), so long as a notice of hearing specifying this information is later sent to the alien." *In re: Wilmer Andres Ruiz Padilla*, 2018 WL 5921066, at *1 (BIA 2018) (citing *Matter of Bermudez–Cota*, 27 I&N Dec. 441 (BIA 2018)). Thus, Castro-Gomez's effort to have the BIA address his jurisdictional argument is futile based on the current state of the law. *See Ojeda–Escobar*, 218 F.Supp.2d at 844.

*2. Judicial Review*

Under 8 U.S.C. § 1326, a noncitizen bringing a collateral challenge must next show that the removal hearing "effectively eliminated [his] right . . . to challenge the hearing by means of judicial review of the order." *Cordova–Soto*, 804 F.3d at 19 (quoting 8 U.S.C. § 1326(d)). Castro-Gomez, however, argues that some procedural errors, like a lack of jurisdiction, are "so fundamental that they may functionally deprive the alien of judicial review." (Reply Mot. Dismiss, Dkt. 38, at 2; Mot. Dismiss, Dkt. 27, at 10). The Government argues that Castro-Gomez cannot show that he was deprived a meaningful opportunity for judicial review. (Resp. Mot. Dismiss, Dkt. 35, at 7–8).

Certain procedural errors "are so fundamental that they may functionally deprive the alien of judicial review." *Mendoza–Lopez*, 481 U.S. at 849 n.17. "While the procedures required in an administrative proceeding are less stringent than those demanded in a criminal trial, analogous abuses could operate, under some circumstances, to deny effective judicial review of administrative determinations." *Id.* (citing *Rose v. Clark*, 478 U.S. 570, 577 (1986) (analogizing to fundamental procedural errors in criminal proceedings, such as use of a coerced confession or adjudication by a biased judge)).

Here, the immigration judge lacked jurisdiction over the proceeding but rendered and enforced a removal order nonetheless. As a result, there was no valid order from which Castro-Gomez could seek an appeal. This fundamental procedural defect "functionally deprived [Castro-Gomez] of judicial review." *Id.* As in *Mendoza–Lopez*, "[t]he fundamental procedural defects of the deportation hearing in this case rendered direct review of the Immigration Judge's determination unavailable." *Id.* at 841 (concluding that respondents were completely deprived of judicial review where an immigration judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation); *see also Puc–Ruiz*, 629 F.3d at 782 ("When the IJ lacks

jurisdiction, his decisions are nullities.").[5] Because the underlying removal order was issued *ultra vires*, there was no valid order form which Castro-Gomez could appeal. The Court thus concludes that Castro-Gomez's collateral challenge is not barred because the void proceedings deprived him of judicial review.

### 3. *Fundamental Fairness*

Next, the Court considers whether it is fundamentally fair for a removal proceeding to be conducted before an immigration judge without jurisdiction. Castro-Gomez contends that it is not. (Reply Mot. Dismiss, Dkt. 38, at 2, 4). This Court agrees. "Fundamental fairness is a question of procedure." *Lopez–Ortiz*, 313 F.3d at 230 (cleaned up). For removal hearings, "due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id.* (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98 (1953)).

The removal hearing in this case fails to satisfy the second and third requirements for fundamental fairness. Although Castro-Gomez attended his removal hearing and, in that sense, had an opportunity to be heard, (*see* Reply Mot. Dismiss, Dkt. 38, at 2; Resp. Mot. Dismiss, Dkt. 35, at 13), his hearing is void for lack of jurisdiction and his opportunity to be heard was not a fair one. Once again, "jurisdictional defects render a judgment void." *Matter of Reitnauer*, 152 F.3d at 344 n.12. A void judgment is not a hearing that comports with due process and it is not a fair opportunity to be heard. Courts have a duty to ensure that "jurisdiction . . . defined and limited by statute, is not exceeded." *Louisville & Nashville R. Co.*, 211 U.S. at 152; *see also Wilson*, 41 F.2d at 706 ("[I]f the order

---

[5] The circumstances here are also analogous to the exhaustion analysis in *United States v. Montano–Bentancourt*, 151 F.Supp.2d 794 (W.D. Tex. 2001). There, the defendant was not given notice of the time and place of his removal hearing and ordered removed in absentia. Applying the Fifth Circuit's three-part test, the court found that a collateral challenge to the deportation order was not barred by the exhaustion requirement because there were no administrative remedies "available" to the defendant before execution of the deportation order. *Id.* at 798 (quoting 8 U.S.C. § 1326(d)).

is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it.").

In *Mendoza–Lopez*—which recognized a due process right to collaterally challenge a prior removal order as a predicate to a § 1326 charge—the Supreme Court analogized fundamental unfairness in removal proceedings to those in criminal proceedings. *See* 481 U.S. at 849 n.17. The Supreme Court declined to enumerate examples but specifically contemplated that certain procedural errors are "so fundamental" that the result of the hearing in which they took place may not "support a criminal conviction." *Id.* This Court finds that issuing a removal order in absence of jurisdiction is such a fundamental procedural error.

The Court declines to find that Castro-Gomez's attendance at the hearing cured its fundamental unfairness. The Court will not invent an actual notice exception to § 1326(d) in light of the Supreme Court's clear directive that a notice lacking a time and place is "not a notice to appear under section 1229(a)." *Pereira*, 138 S. Ct. at 2118. "[T]he statute makes clear that Congress fully intended to attach substantive significance to the requirement that noncitizens be given notice of at least the time and place of their removal proceedings. A document that fails to include such information is not a notice to appear under section 1229(a)." *Id.* (internal citations and quotations omitted). Additionally, "[s]ubject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." *Marco v. United States*, No. 1:09-CV-761, 2010 WL 3992113, at *7 (S.D. Ohio Oct. 12, 2010) (citing *Union Pac. Ry. Co.*, 558 U.S. at 81) (concluding that "jurisdiction" under § 1003.14 refers to subject-matter jurisdiction).

Because the immigration judge lacked jurisdiction over the removal proceedings, the removal hearing was fundamentally unfair and cannot support a criminal conviction. Castro-Gomez has satisfied this requirement to collaterally attack his prior removal order. *See Cordova–Soto*, 804 F.3d at 719 (quoting 8 U.S.C. § 1326(d)).

*4. Prejudice*

Finally, in a collateral challenge to the underlying removal order in a § 1326 prosecution, the Fifth Circuit also requires a noncitizen to show that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Cordova–Soto*, 804 F.3d at 718–19 (quoting *Benitez–Villafuerte*, 186 F.3d at 658–59). In other words, "[i]f the defendant was legally deportable and, despite the . . . errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326." *Benitez–Villafuerte*, 186 F.3d at 659. Castro-Gomez argues that because the immigration judge lacked jurisdiction, the removal proceeding was so fundamentally unfair that he need not show prejudice. (Reply Mot. Dismiss, Dkt. 38, at 4). The Government argues that Castro-Gomez cannot show any actual prejudice caused as a result of the defective NTA. (Resp. Mot. Dismiss, Dkt. 35, at 34–35).

The Fifth Circuit's general test for prejudice in a collateral challenge to a § 1326 prosecution derives from cases in which there was no dispute as to the jurisdiction of the immigration judge. *See, e.g., Cordova–Soto*, 804 F.3d at 719; *Lopez–Ortiz*, 313 F.3d at 229; *Lopez–Vasquez*, 227 F.3d at 483; *United States v. Encarnacion–Galvez*, 964 F.2d 402, 409 (5th Cir. 1992). As the Fifth Circuit noted in *Benitez–Villafuerte*, the Supreme Court has recognized that some removal proceedings might be "so fundamentally unfair that [the petitioner] need not show actual prejudice." 186 F.3d at 659 (citing *Mendoza–Lopez*, 481 U.S. at 839 n.17). In *Mendoza–Lopez*, the Supreme Court allowed collateral attack to a § 1326 indictment without a showing of prejudice. The Supreme Court explained that "[b]ecause respondents were deprived of their rights to appeal, and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained to them, the deportation proceeding in which these events occurred may not be used to support a criminal conviction, and the dismissal of the indictments against them was therefore proper." *Mendoza–Lopez*, 481 U.S. at 842.

The same principle applies here. Because the immigration judge lacked jurisdiction, "the deportation proceeding in which these events occurred may not be used to support a criminal conviction." *Id.* The Court concludes that a removal proceeding in which the immigration judge lacked jurisdiction is so fundamentally unfair that Castro-Gomez need not show prejudice. Enforcing an invalid removal order to make Castro-Gomez eligible for criminal prosecution under § 1326 would offend due process standards of fundamental fairness, and this Court declines to do so.

## IV. CONCLUSION

In order to prove a charge of illegal reentry into the United States by a previously deported noncitizen, the Government must prove beyond a reasonable doubt that Castro-Gomez "(1) was an alien at the time of the alleged offense; (2) had been previously deported; (3) attempted to enter the United States; and (4) had not received the express consent of the Attorney General or the Secretary of the Department of Homeland Security." *United States v. Jara–Favela*, 686 F.3d 289, 302 (5th Cir. 2012). But here, the immigration judge lacked jurisdiction over Castro-Gomez's prior removal proceedings. As a result, that removal order is void. Without a prior removal order, the Government cannot prove an essential element of its case.

Accordingly, **IT IS ORDERED** that Castro-Gomez's Motion to Reconsider the Denial of Castro-Gomez's Motion to Dismiss, (Dkt. 41), is **GRANTED**, and Castro-Gomez's Motion to Dismiss, (Dkt. 27), is **GRANTED**.

**IT IS ORDERED** that the indictment in this matter, (Dkt. 8), is **DISMISSED WITH PREJUDICE**.

This case is **CLOSED**.

**SIGNED** on February 8, 2019.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE